### JAMES FLANNAGAN *v.* JULIUS NEWBERG.

ATTACHMENT—DISSOLUTION.—A writ of attachment improperly issued should
be dissolved on motion.

CUMULATIVE EVIDENCE.—When newly discovered evidence relates to a sub-
stantial point or particular fact which was inquired into on the trial, it
is cumulative.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—PRACTICE.—If the newly dis-
covered evidence brings to light some new fact bearing upon the main
question at issue, and would be likely to change the result, a new trial
should be granted.

APPEAL from the first district, Nez Perce county.

*Curtis & George,* for the appellant.

*A. Heed,* for the respondent.

KELLY, J., delivered the opinion of the court, McBRIDE,
C. J., and CUMMINS, J., concurring.

This action was brought by plaintiff as assignee of a
promissory note for six hundred and twenty dollars, made
by the appellant March 27, 1863, and payable to one E.
Malony or order, and transferred by the payee to this
plaintiff (appellee) some time after its maturity. The note
and one hundred and fifty dollars cash were given for one
half of a pack train, and was to become due when the train
returned from Florence to Lewiston. The note was left in

the hands of James O'Neil for safe keeping until the return of the train, and remained in O'Neil's hands until about the first of November of the same year. The note was assigned to plaintiff October 10, 1863. The plaintiff, Flannagan, at the time of commencing the suit, sued out a writ of attachment and levied upon the property of defendant. The ground for issuing the attachment, as set forth in the affidavit, is that the defendant was about to sell, convey, or otherwise dispose of his property with intent to hinder, delay, or defraud his creditors.

The answer of the defendant admits the making of the note, but sets forth that the note had been paid while in the hands of O'Neil, and defendant was fully discharged from said indebtedness and the plaintiff had full notice.

The defendant on the nineteenth of December moves to dissolve the attachment on the ground that the facts upon which the attachment was issued did not exist, and the affidavit upon which the writ issued was insufficient and shows no cause for an attachment. This motion was heard upon affidavits submitted by each party, but was denied by the court, to which ruling the defendant's counsel duly excepted. This cause was tried by a jury, and a verdict found for the plaintiff for the amount prayed for in the complaint. The defendant moved for a new trial on the ground that the verdict was contrary to evidence, and also on the ground of newly discovered evidence. The evidence to support the attachment should show that the defendant had or was about to dispose of his property to hinder, delay, or defraud his creditors.

The affidavit of the plaintiff Flannagan shows that the defendant Newberg denied the indebtedness upon which the suit was brought, and had denied such indebtedness from the time he made the second trade with Malony, which the plaintiff well knew; that because the defendant denied such indebtedness and refused to present an order for said note, and declared his intention to go to Europe, the plaintiff was induced to believe the defendant about to dispose of his property to hinder, delay, or defraud his creditors; that defendant told plaintiff he had gold dust on deposit in

the town of Lewiston subject to attachment; that defendant had sold his pack train to one L. P. Brown, and that he had no property aside from money or debts that he (plaintiff) knew of.

The testimony of the other witnesses on the part of the plaintiff corroborates the statement that the defendant had declared his intentions to close up his business and make an extensive tour in Europe. The evidence upon which this attachment must be sustained can not go to any other ground for the issuance of an attachment except the one alleged in the affidavit. That portion of the evidence which relates to the defendant's leaving the territory is entirely irrelevant, because no such ground is alleged in the affidavit.

The plaintiff swears that he had made diligent inquiry in the town of Lewiston and was unable to find where the defendant's gold dust was deposited. He does not set forth what diligence he had used either generally or specially. He does not say that the defendant refused to inform him where his gold dust was deposited, or that he ever made inquiry of the defendant, or that the defendant ever refused to tell him of any other property that he owned. The plaintiff does not say he made inquiry at the most usual places of making deposits in the town of Lewiston, to learn the whereabouts of defendant's gold dust, or that if defendant had gold dust on deposit it was deposited in some unusual manner, either by the enjoinment of secrecy or making the deposit with some person not in the habit of receiving deposits.

On the other hand, the defendant shows that his gold dust was on deposit, as he stated to plaintiff, at the assay office, and in the custody and safe of the most public hotel-keeper in said town without any enjoinment of secrecy. The defendant also shows by twelve witnesses who are acquainted with the defendant's dealings, and many of them have had extensive mercantile dealings with him for a long time prior and up to the time of the issuance of this attachment, that the defendant was always honorable in his dealings, paid his debts, had property to a considerable amount, and

never concealed or made any fraudulent disposition of his property; none of which is denied by the plaintiff's evidence, except by the testimony of one witness.

The facts as shown by the testimony are that the defendant never sold or disposed of any property to hinder, delay, or defraud his creditors. That he denied the indebtedness to plaintiff was a right which the defendant had, and of itself is no ground for the issuance of an attachment. The refusal of the judge below to dissolve the attachment was clearly an abuse of discretion, which should be corrected by this court. The point raised by the appellant's counsel that the affidavit is made in the alternative was not taken in the court below, and we have concluded to pass that question, as there is sufficient ground to dissolve the attachment upon the evidence submitted.

The evidence on the trial of this case showed that the appellant on the twenty-sixth day of March, 1863, bought an undivided half interest in the pack train of one James Malony, for which he gave the note sued on in the plaintiff's complaint; that the note was to become due after the train had made one trip to Florence, and was placed in the hands of James O'Neil until that contingency should happen. Malony gave Newberg, the appellant, a bill of sale of said half interest. The purchase price was mentioned in the bill of.sale and in the note. Newberg and Malony went with the train on this trip, and when they arrived at Warren's diggings they made another bargain and Newberg agreed to buy the whole train. Malony could not write, but called on A. R. Riddle, an acquaintance of both parties, but who never had any business relations with either, to draw up the writings between the parties. Riddle testifies that the bargain was stated over to him in this wise:

"When they arrived at Warren's they made another trade, and Mr. Newberg bought all the animals, and they settled up all their business transactions, and mention was made of the note that was left with James O'Neil, and a mule and another animal or two that was left on the road, and the liabilities of the train that had accrued, was all I heard mentioned in the settlement. Newberg was to pay

Malony fifteen hundred dollars and take his note that was left with O'Neil, and the mule and the animals left on the road, and the train, and to pay the liabilities. This was the sum and substance of the settlement that they had in my presence."

Riddle was shown the second bill of sale and recognized it as the one given at the time this trade was made, and says that he drew up the bill of sale. He also recognizes the one thousand dollar note as the one given at that time which he drew up for the parties. Newberg paid five hundred dollars down and gave the one thousand dollar note as the balance of the one thousand five hundred dollars. Riddle says:

"There was mention made of the first note, and I was desired to insert it in the bill of sale, but I omitted to do so. Newberg spoke of it afterwards. I told them, as they were partners, and both acquainted with O'Neil, that there would be no difficulty in Mr. Newberg's getting possession of the note. They both concurred with me in that opinion. The settlement was intended to render null and void the transaction that they had at Lewiston."

The first bill of sale conveyed an undivided interest in nine mules and thirteen horses for the consideration mentioned in the first note, to wit, six hundred and twenty dollars, and one hundred and fifty dollars in cash—all branded E. M. The second bill of sale conveyed ten mules and sixteen horses branded E. M. for the consideration of fifteen hundred dollars, and Newberg was to pay the outstanding expenses against the train.

James O'Neil testifies that he saw Malony after the last sale was made; that he then had the six hundred and twenty dollar note and first bill of sale in his hands and Malony said nothing about it, but told him he had a one thousand dollar note on Newberg. Newberg had previously told him the note was paid, but it was when O'Neil was at Florence and he did not have the note with him; that Newberg afterwards sent an order for it; that when Flannagan demanded the note he refused to give it up because

Newberg claimed that it was paid.  Flannagan gave him a bond to indemnify him and he then gave it up.

Galbraith testifies that some time in June he asked Malony how he was getting along with Newberg.  He said, I have sold out and have Newberg's note for one thousand dollars; he paid me five hundred dollars cash.  Malony said nothing about the six hundred and twenty dollar note left with O'Neil.

Kavenaugh gave his deposition before the trial on the supposition that he would not be present at the trial.  In taking this deposition the plaintiffs were present and had the benefit of a cross-examination.  In this deposition he testifies that he was not present when the writings were drawn up by Riddle.  That after they had traded, Malony turned the train out to him for Newberg, and Malony said Newberg had squared up with him like a man.  As the defendant was about to read this deposition on the trial, it was discovered that Kavenaugh was in the room, and the defendant was then required to dispense with the deposition and put Kavenaugh on the stand to give his testimony orally.  Kavenaugh then swore that he was present at the time the writings were drawn up, and that the one thousand five hundred dollars was given by Newberg for one half the train.

Sweeny testifies that he assisted Malony and Newberg to settle, and found four hundred dollars due Malony on a one thousand dollar note.  This was an arbitration settlement in regard to matters that took place after the sale of the train at Warren's and dated back to that time—but the six hundred and twenty dollar note was not included.  Sweeny says that he understood that the one thousand dollar note and the five hundred dollars cash was for Malony's half interest in the pack train sold by Malony to Newberg and its freight earnings.

Both notes and both bills of sale were given in evidence to the jury.  The first bill of sale is for an undivided one half of the train.  The second bill of sale is for ten mules and sixteen horses, which was proven to be the whole train.

Upon a motion for a new trial, the defendant sets forth

as the grounds of his motion that he was taken by sur-
prise in the testimony of Kavenaugh, inasmuch as he did
not know that Kavenaugh would be present at the trial;
that his testimony was different from his statement which
he had previously made, and materially different from his
deposition; also that he could prove by newly discovered
evidence which he could not by due diligence have procured
at the trial, to wit, the testimony of John McConnell, "that
Malony said to McConnell in the month of September,
1863, that he [Malony] had no demand against him [New-
berg, the defendant] whatever." Those facts are fully set
forth by the affidavit of defendant and the affidavit of Mc-
Connell.

The plaintiff objects to this newly discovered evidence on
the ground that it is cumulative. This admission of Malony
was prior to his transfer of the six hundred and twenty dol-
lar note to Flannagan, and a new and independent fact un-
known to the defendant at the time of the trial. Had this
admission been proven at the trial, the testimony of other
witnesses to the same admissions would be merely cumula-
tive. In the case of *Aitken* v. *Bemis,* 3 Wood. & M. 348,
Judge Woodbury said: "The meaning of the rule can not
be to exclude as cumulative newly discovered evidence of
subordinate points or facts bearing on the general question,
for in such views no trial for new evidence could ever be
obtained; all new evidence relating, as it must, if it be
pertinent, to the general ground or general fact put in is-
sue before. But it must mean that new evidence to a sub-
ordinate point or particular fact was before gone into; be-
cause it is then cumulative, or additional, as to that fact."

In the case of *Gray* v. *Harris,* Nev. 509, Chief Justice
Lewis says: "To render evidence subject to this objection,
it must be cumulative, not with respect to the main issue
between the parties, but upon some collateral or subordi-
nate fact bearing upon that issue. If the newly discovered
evidence brings to light some new fact bearing upon the
main question, and it would be likely to change the result,
a new trial should be granted."

The facts claimed to have been newly discovered are cer-

tain admissions of Malony, the payee mentioned in the note in dispute, made before the payee transferred the note to the plaintiff. There was no testimony introduced on the trial of such an admission, and the defendant swears it was not discovered until after the trial. There is considerable doubt as to whether the evidence would support the verdict rendered in this case, but as there is sufficient ground for a new trial which ought to have been considered by the court below, we shall set aside the judgment on that ground, and a new trial is therefore ordered and the attachment dismissed.

Judgment reversed.